UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 3 0 2016
```

David I. Houck,

                Plaintiff,

        —v—

US Bank NA *et al.*,

                Defendants.

15-cv-10042 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Plaintiff David Houck has brought suit against Wells Fargo Bank, N.A. ("Wells Fargo") and US Bank as Trustee for Citigroup Mortgage Loan Trust 2007-AR5 ("US Bank"), challenging various actions taken by the defendants when handling Plaintiff's mortgage loan. Plaintiff previously sued Wells Fargo in state court, alleging very similar (and often identical) claims and seeking the same relief. Plaintiff lost in state court, and he subsequently filed suit in federal court.

Defendants' motions to dismiss, transfer, strike, and take judicial notice are now before the Court. As explained below, the Court grants in part Defendants' unopposed motion to take judicial notice. The Court also grants Defendants' motion to dismiss because, among other things, Plaintiff brings claims barred by res judicata, and he cannot allege a cognizable injury. The motions to transfer and strike are thus denied as moot.

1

I.    **BACKGROUND**

    A.    **Plaintiff's Mortgage & Subsequent Assignments**

        The following factual allegations are taken largely from Plaintiff's amended complaint,

but have been supplemented with several judicially noticeable documents.[1]

        On May 20, 2006, Plaintiff purchased a property at 545 Bellagio Terrace in Los Angeles,

California. Amend. Compl. ¶ 7 (Dkt No. 36). Plaintiff acquired this property with a $2.7 million

loan originated by Defendant Wells Fargo, which was secured by a deed of trust on the property.

*Id.*; Def. Ex. A (Dkt No. 17-1).[2]  Such an arrangement constitutes the equivalent of a mortgage in

California. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 81 (2d Cir. 2014).

        Plaintiff was unable to pay back this loan. According to Plaintiff, Wells Fargo "illegally,

deceptively and/or otherwise unjustly qualified Plaintiff for a loan which [Wells Fargo] knew or

should have known that Plaintiff could not qualify for or afford." Amend. Compl. ¶ 23. Plaintiff

failed to make a March 1, 2012 payment, and the "Notice of Default" eventually sent to Plaintiff

stated that he owed $119,205.40 as of November 13, 2012. Ex. C. Foreclosure proceedings

were eventually instigated and appear to remain pending. *See* Amend. Compl. ¶ 21; Ex. D.; Def.

Ex. F at 51-52; Def. Ex. J; Mot. at 1 (Dkt No. 44).

        Plaintiff's deed of trust was transferred several times. The deed itself contemplated this

occurrence, stating that the deed "can be sold one or more times without prior notice to

Borrower." Def. Ex. A at 11. On October 18, 2012, Wells Fargo assigned the deed of trust to

Defendant US Bank. Amend. Compl. ¶ 8; Ex. A. One day later, on October 19, 2012, US Bank

substituted non-party Cal-Western Reconveyance Corporation ("Cal-Western") as the new

---

[1] *See infra* Part III (discussing the documents of which the Court has taken judicial notice).

[2] Citations to "Ex." refer to the documents attached to Plaintiff's amended complaint. *See* Dkt No. 36. Citations to
"Def. Ex." refer to the documents attached to Defendants' unopposed request for judicial notice. *See* Dkt No. 17.

trustee. Amend. Compl. ¶ 9; Ex. B. Plaintiff repeatedly alleges that Defendants never informed

him of these transfers or assignments. Amend. Compl. ¶¶ 8-9, 18-19, 38, 47-49, 70. According

to Plaintiff, he first learned about the assignments in October 2014, when he hired an

independent auditor to examine his mortgage. Amend. Compl. ¶¶ 12, 17.

### B.    Prior State Court Litigation

In March 2013, Plaintiff filed a lawsuit in California Superior Court against Wells Fargo

and Cal-Western. Amend. Compl. ¶ 18; Def. Ex. F. In that lawsuit, Plaintiff asserted that

Defendants had no "right, title, or interest in Plaintiff's note, mortgage, or deed of trust," and he

sought to prevent foreclosure on his property. Def. Ex. F. ¶ 3. Although Plaintiff brought a

number of causes of actions, his basic assertion was that Wells Fargo and Cal-Western were

foreclosed from asserting their rights under the deed of trust because they had taken a number of

illegal actions, including using "deception in inducing Plaintiff to enter into [the] loan and

mortgage," failing to negotiate in good faith a modification of the loan, and violating "numerous

consumer and home protection statutes." Def. Ex. F. ¶¶ 1, 42-46.

In support of his state court complaint, Plaintiff attached a number of documents. One

such document was the "Notice of Default" sent to Plaintiff on November 13, 2012. Def. Ex. F.

at 51-52; Def. Ex. I at 76. This document stated that, in order to avoid foreclosure, Plaintiff

needed to "contact" or "pay" "US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR

CITIGROUP MOROTGAGE LOANTRUST INC. . . . C/O CAL-WESTERN

RECONVEYANCE CORPORATION." Def. Ex. F at 51. The Notice of Default also stated that

Cal-Western was "either the original trustee, duly appointed substituted trustee, or acting as an

agent for the trustee or beneficiary" of Plaintiff's mortgage. Def. Ex. F. at 52; Def. Ex. I at 76.

Plaintiff attached this same "Notice of Default" as an exhibit to the amended complaint filed in

this Court.  Amend. Compl. Ex. C (Dkt No. 36-3).  Notwithstanding these documents identifying

US Bank and Cal-Western as parties with interest in his mortgage loan, Plaintiff claims that he

had no idea that US Bank and Cal-Western were involved with his mortgage.  Amend. Compl. ¶¶

8-9, 18-19, 38, 47-49, 70.

Plaintiff lost in state court.  Defendants successfully demurred Plaintiff's first, second,

and third amended complaints.  Def. Ex. G; Def. Ex. H; Def. Ex. J; Def. Ex. K; see *Swahn Grp.,*

*Inc. v. Segal*, 108 Cal. Rptr. 3d 651, 661 (Cal. Ct. App. 2010) ("A motion to dismiss in federal

court is the equivalent of a demurrer in California.").  The state court upheld the validity of

Plaintiff's mortgage loan and Wells Fargo's rights under the deed of trust.  *See* Def. Ex. J; Def.

Ex. K.  In doing so, the state court recognized that Plaintiff had "delinquent obligations" and had

been unable "to allege performance on his part of the underlying mortgage obligation." *See* Def.

Ex. J at 3.  On June 13, 2014, the California Superior Court dismissed the action with prejudice

for failure to state a claim upon which relief could be granted.  Def. Ex. J; Def. Ex. K.

### C.    Current Lawsuit

On December 24, 2015, Plaintiff filed the present lawsuit against Wells Fargo and US

Bank.  Dkt. No. 1.  On January 20, 2016, Defendants filed a motion to dismiss, a motion to

transfer the case to the United States District Court for the Central District of California, and a

motion to strike certain portions of the complaint.  Dkt Nos.  8, 11, 13.  They also sought judicial

notice of several exhibits, most of which were documents filed in the 2013 state court litigation.

Dkt No. 17.  In response to the motion to dismiss, Plaintiff filed a first amended complaint on

February 26, 2016.  Dkt. No. 36.

Plaintiff's amended complaint asserts six causes of actions.  Amend. Compl. ¶¶ 33-73.  In

Count I, Plaintiff seeks three declarations: (1) that neither defendant has "a valid property

4

interest in [his] Property," (2) that the assignments are "void" and thus that "all attempts to foreclose by Defendants (and Cal Western) against the subject property are void," and (3) that "Defendants failed to comply with the PSA and other trust documents." Amend. Compl. ¶¶ 33-36. Plaintiff's other causes of action are for constructive fraud (Count II), a violation of the Truth in Lending Act (Count III), slander of title (Count IV), violations of the Fair Debt Collection Practice Act ("FDCPA") (Count V), and breach of the covenant of good faith and fair dealing (Count VI). Amend. Compl. ¶¶ 37-73. Plaintiff seeks relief in the form of a declaration that neither of the defendants "have an enforceable . . . claim against [his] property," an injunction preventing the foreclosure sale of his home, a return of all of the money that Defendants have collected from Plaintiff under the mortgage loan agreement, and other damages. Amend. Compl. at 15-17.

Defendants responded to the amended complaint with renewed motions to dismiss and strike. Dkt. Nos. 39, 43. The motions to transfer and take judicial notice remained pending. Dkt. No. 17, 37. The Court now resolves all four motions.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a motion to dismiss, all allegations in the complaint are assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This tenet, however, does not apply "to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of the amount of factual detail provided in a complaint, a court may grant a motion to dismiss "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III.   REQUEST TO TAKE JUDICIAL NOTICE

Defendants have filed a motion to take judicial notice of several documents.  Dkt No. 17. Specifically, Defendants ask the Court to take judicial notice of the following twelve documents: (1) Plaintiff's deed of trust (Def. Ex. A); (2) the assignment of the deed of trust from Wells Fargo to US Bank (Def. Ex. B); (3) the substitution of Cal-Western as trustee (Def. Ex. C); (4) the November 13, 2012 Notice of Default (Def. Ex. D); (5) a Notice of Trustee's Sale (Def. Ex. E); (6) Plaintiff's initial state court complaint (Def. Ex. F); (7) a notice of the state court's demurrer of Plaintiff's first amended complaint (Def. Ex. G); (8) the state court's demurrer of Plaintiff's second amended complaint (Def. Ex. H); (9) Plaintiff's third amended complaint in state court (Ex. I); (10) the state court's demurrer of Plaintiff's third amended complaint (Def. Ex. J); (11) the state court's order dismissing Plaintiff's third amended complaint with prejudice (Def. Ex. K); and (12) the state court order dismissing Plaintiff's appeal (Def. Ex. L).  Defendants' request for judicial notice is unopposed.

Defendants' request to take judicial notice of Exhibits B, C, D, and E is denied as moot. On a motion to dismiss, "[i]n addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters." *Ace Sec. Corp. Home Equity Loan Tr, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Products, Inc*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  These four exhibits (the assignment of the deed of trust to US Bank, the assignment of the deed of trust to Cal-Western, the 2012 Notice of Default, and the Notice of Trustee's Sale) were attached to Plaintiff's amended complaint, and thus may be considered when analyzing the

motion to dismiss even without taking judicial notice. *Compare* Ex. A, *with* Def. Ex. B; Ex. B, *with* Def. Ex. C; Ex. C, *with* Def. Ex. D; Ex. D, *with* Def. Ex. E; *see Chambers*, 282 F.3d at 152 (noting that, for purposes of analyzing a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit" (citation omitted)).

Defendants' request to take judicial notice of Exhibit A, Plaintiff's deed of trust, is also denied as moot. When analyzing a motion to dismiss, a court may consider "documents incorporated in [the complaint] by reference." *Chambers*, 282 F.3d at 152 (citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153 (citation and quotation marks omitted). Here, although Plaintiff does not attach the deed of trust to his amended complaint, the allegations in the amended complaint repeatedly refer to, and rely heavily on, the deed of trust. *See, e.g.*, Amend. Compl. ¶¶ 7-9, 15-20, 22, 29-31, 36, 38-41, 52. Thus, the Court may consider the deed of trust even without granting the request for judicial notice.

The Court grants Defendants' unopposed request to take judicial notice of Exhibits F through L. As noted above, these are all documents filed during the prior state court litigation. Courts are permitted to take judicial notice of state court documents, even on a motion to dismiss. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *Bey v. City of New York*, No. 13–CV–9103 (AJN), 2015 WL 363903, at *1 & n.2 (S.D.N.Y. Jan. 28, 2015). This is especially true when a court is tasked with deciding the preclusive effect of the prior proceedings. *See Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607, 2005 WL 1844642, at *3

(S.D.N.Y. July 29, 2005) ("In cases where some of th[e] factual allegations have been decided otherwise in previous litigation, . . . a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."). Because Defendants allege that Plaintiff's lawsuit is barred by the principle of res judicata, *see* Mot. at 12-15, the Court takes judicial notice of these state court documents for purposes of analyzing this question.

In summary, the Court has considered all of the exhibits attached to Defendants' unopposed request for judicial notice when deciding this motion to dismiss. The Court considers Exhibits A through E, not because Defendants have asked for judicial notice of these documents, but because they are considered part of the complaint for purposes of the motion to dismiss, as they were either attached to or relied upon in the amended complaint. *See Chambers*, 282 F.3d at 152-53. The Court considers Exhibits F through L on the unopposed ground that the Court may take judicial notice of such state court documents, especially for purposes of analyzing claim and issue preclusion.

## IV.   PLAINTIFF'S AMENDED COMPLAINT IS DISMISSED

Plaintiff has voluntarily dismissed Count III of his amended complaint, *see* Opp. ¶ 36, which leaves five other counts pending. Plaintiff's remaining counts can be divided into three different categories: (1) challenges to the validity of the mortgage itself, (2) challenges to assignments of Plaintiff's mortgage, and (3) a claim under the FDCPA.

Counts I and VI fall within both the first and second categories, as these counts in part challenge the underlying validity of Plaintiff's mortgage loan and in part challenge the assignments of that loan. Amend. Compl. ¶¶ 33-36, 67-73. Counts II and IV fall into the second category, as they challenge the assignments of Plaintiff's deed of trust to US Bank and Cal-Western. *See* Amend. Compl. ¶¶ 33-60, 67-73. Finally, Count V falls into the third category and

8

is the only cause of action not directly challenging the mortgage or assignments. This count alleges that the defendants violated the FDCPA. Amend. Compl. ¶¶ 61-66.

For the reasons provided below, the Court dismisses all five counts. To the extent Counts I and VI challenge validity of Plaintiff's mortgage, those counts are barred by res judicata under California law. The Court dismisses the remainder of those two counts, along with Counts II and IV, because Plaintiff did not suffer an injury by virtue of the assignments. The failure to allege an injury means both that Plaintiff lacks standing to bring his amended complaint and that Plaintiff has failed to state a claim for several of his causes of action. Finally, the FDCPA claim (Count V) is dismissed because Defendants are not "debt collectors," and thus Plaintiff has failed to state a claim upon which relief can be granted.

### A.   Plaintiff's Challenges to the Underlying Validity of His Mortgage Loan Are Barred by Res Judicata

Defendants contend that Plaintiff's lawsuit is barred by res judicata. Mot. at 12-15. The Court agrees in part.

"The doctrine of res judicata precludes the relitigation of certain matters which have been resolved in a prior proceeding under certain circumstances." *Pitzen v. Superior Court*, 16 Cal. Rptr. 3d 628, 6.32 (Cal. Ct. App. 2004) (citation omitted); *see also Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) ("To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state.").[3] In California, the doctrine of res judicata "has two aspects[:] [i]t applies to both a previously litigated cause of action, referred to as claim preclusion, and to an issue

---

[3] The parties here agree that California law applies to determine the preclusive effect of the prior state court litigation. *See* Mot. at 12-13; Opp. ¶ 21.

necessarily decided in a prior action, referred to as issue preclusion." [4] *Pitzen*, 16 Cal. Rptr. 3d at 632-633. Both claim and issue preclusion "have the 'dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Border Bus. Park, Inc. v. City of San Diego*, 49 Cal. Rptr. 3d 259, 279 (Cal. Ct. App. 2006). California requires three elements before "applying the doctrine [of res judicata] to either an entire cause of action [claim preclusion] or one or more issues [that] are the same [issue preclusion]: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Pitzen*, 16 Cal. Rptr. 3d at 633; *see also DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015).

Plaintiff does not dispute that the last two elements — "final judgment" and "same parties"[5] — are met in this case. *See* Opp. ¶¶ 21-25. He argues, however, that his federal lawsuit does not involve the same cause of action or issues as his prior state court litigation. According to Plaintiff, the state court litigation focused on the defendants' unlawfulness in issuing and handling his mortgage loan, while the present lawsuit challenges "the void

---

[4] In California courts, the term "res judicata" is sometimes used "to encompass both claim preclusion and issue preclusion." *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002). In other cases, California courts use the term "res judicata" to describe "claim preclusion," which has a "distinct meaning[]" from "collateral estoppel" (or "issue preclusion"). *Id.* Here, the Court uses the term "res judicata" to refer to both claim and issue preclusion, as both doctrines operate in tandem in this case to bar Plaintiff's allegations.

[5] Although US Bank was not a party to the prior lawsuit, res judicata nonetheless applies as to both Wells Fargo and US Bank because the two entities are in privity with one another. *See Mycogen Corp.*, 51 P.3d at 301 (noting that res judicata applies "between the same parties or parties in privity with them"); *see also Barnes v. Homeward Residential, Inc.*, No. 13–3227 SC, 2013 WL 5217393, at *33 (N.D. Cal. Sept. 17, 2013) (finding privity between the "former and current holders of the beneficial interest of the [deed of trust] securing the mortgage"); *Planning & Conservation League v. Castaic Lake Water Agency*, 103 Cal. Rptr. 3d 124, 142 (Cal. Ct. App. 2009) (noting that privity "refers to a mutual or successive relationship to the same rights of property" (quotation marks omitted)).

assignment of [the] Deed of Trust to [US Bank]." Opp. ¶ 23. Because the two lawsuits focus on "different wrongs," Plaintiff argues that res judicata does not apply. *Id.*

Plaintiff misrepresents the scope of his allegations in this federal lawsuit. Although Plaintiff claims that this federal lawsuit does not repeat the same claims that he raised in state court, *see* Opp. ¶¶ 23-24, this is incorrect. Many of Plaintiff's factual allegations raise the same issues that were raised before, and rejected by, the California Superior Court. For example, in both state and federal court, Plaintiff alleged that Wells Fargo acted improperly in inducing him to obtain a mortgage loan in the first place. Def. Ex. F ¶ 1; Amend. Compl. ¶ 23. Additionally, Plaintiff argued in state court (as he does here) that Wells Fargo failed to modify his loan in good faith. Def. Ex. F ¶¶ 25-27, 34; Def. Ex. I. ¶¶ 27-43; Amended Compl. ¶ 72. Furthermore, Plaintiff seeks the same relief as he did in state court, including a declaration that none of the defendants have any right or interest in his mortgage loan and an injunction prohibiting the sale of his home. Def. Ex. F. ¶ 3; id. at 26-27; Def. Ex. I at 43; Amended Compl. at 15-17. Because these are the exact same issues litigated before and rejected by the California court, these allegations are barred by issue preclusion. *See Proctor v. Vishay Intertechnology, Inc.*, 152 Cal. Rptr. 3d 914, 926 (Cal. Ct. App. 2013) (noting that issue preclusion bars relitigation of the "the same facts in different cases between the same parties" (citation omitted)).

Additionally, two of Plaintiff's causes of actions raise claims already rejected by the state court. For example, one of the declarations Plaintiff seeks in Count I is a declaration that the defendants "cannot prove that they have a valid interest in the Property." Amended Compl. ¶ 34. The California Superior Court, however, has already concluded that Wells Fargo has a valid interest in Plaintiff's property. *See* Def. Ex. at J; Def. Ex. K. Additionally, in Count VI, Plaintiff contends that the defendants breached the covenant of good faith and fair dealing for a variety of

reasons, including by "failing to perform loan servicing functions consistent with their responsibilities to Plaintiff," failing to modify Plaintiff's loan in good faith, and "failing to follow through on written, verbal, and implied promises." Amended Compl. ¶ 72. Plaintiff himself admits that he raised these claims during the prior litigation. *See* Opp. ¶ 23; *see also* Def. Ex. F ¶¶ 1, 25-27, 34; Def. Ex. I. ¶¶ 27-43. These causes of action are thus barred by the principle of claim preclusion. *Burdette v. Carrier Corp.*, 71 Cal. Rptr. 3d 185, 190 (Cal. Ct. App. 2008) ("Claim preclusion bars a second action upon the same claim against the same parties litigated to a final judgment in a prior action.").

Overall, Plaintiff previously challenged the underlying validity of his loan, on the basis that Wells Fargo acted unlawfully when issuing and handling Plaintiff's mortgage. The state court rejected this challenge. Def. Ex. at J; Def. Ex. K. In light of the state court's final judgment, any challenges to the validity of Plaintiff's mortgage (as distinct from the assignments of those mortgages) are barred by res judicata. Additionally, Plaintiff's request for a declaration that Wells Fargo has no valid interest in his property (one of the three declarations sought in Count I) and Plaintiff's cause of action alleging a breach of the covenant of good faith and fair dealing based on Wells Fargo's mishandling of Plaintiff's mortgage loan (Count VI) are also barred by res judicata.[6]

The Court, however, agrees with Plaintiff that res judicata does not bar his entire amended complaint. "Res judicata bars . . . only issues that were raised in the prior suit [and] related issues that could have been raised." *Villacres*, 117 Cal. Rptr. 3d at 404. As Plaintiff

---

[6] Counts I and Counts VI contain multiple allegations and, as mentioned previously, challenge both the underlying validity of Plaintiff's mortgage and the assignments of that mortgage. *See* Amend. Compl. ¶¶ 33-36, 67-73. Only the aspects of Counts I and VI challenging the validity of the mortgage loan itself are barred by res judicata. As explained below, however, the Court dismisses the entirety of Counts I and VI because, to the extent Counts I and VI not barred by res judicata, they are nonetheless barred because Plaintiff cannot show an injury.

points out in his opposition brief, his prior lawsuit challenged Wells Fargo's issuing and handling of his mortgage loan, not the allegedly void assignments. Opp. ¶ 23. And, assuming that Plaintiff's allegations are true, which the Court must do at this stage of the litigation, Plaintiff could not have challenged the assignments during the prior state court litigation. This is because, according to Plaintiff, he did not know about the assignments until October 2014, after the state court litigation had ended. Amend. Compl. ¶¶ 12, 17. Because Plaintiff could not have previously challenged the assignments, the Court rejects Defendants' argument that all of the causes of actions in Plaintiff's amended complaint are barred by res judicata.

### B.   Plaintiff Does Not Plausibly Allege that the Assignments of His Mortgage Loan Caused an Injury

Although the Court rejects Defendants' argument that Plaintiff's entire amended complaint is barred by res judicata, the Court agrees with the defendants that Counts I, II, IV, and VI must nevertheless be dismissed because Plaintiff has failed to plausibly allege an injury. Mot. at 8-12.

As previously mentioned, all four of these counts focus on the same alleged wrong: the assignments of Plaintiff's mortgage loan, first from Wells Fargo to US Bank and then from US Bank to Cal-Western. In Counts I, IV, and VI, Plaintiff seeks relief on the ground that the assignments are "void." Amend. Compl. ¶¶ 21, 34-35, 53, 72(h). In Counts II and VI, Plaintiff claims that Defendants are liable for failing to disclose the assignments. Amended Compl. ¶¶ 38, 72(e).

As explained in greater detail below, these counts fail as a matter of law because Plaintiff cannot allege an injury. In sum, even if the assignments of Plaintiff's mortgage were unlawful, as Plaintiff maintains, Wells Fargo nonetheless maintained a valid interest in the mortgage loan.

Because Plaintiff was required to pay back his mortgage loan regardless of the assignments, he was not harmed by the assignments.

### 1.    Plaintiff Must Allege an Injury

For two different reasons, in order for his amended complaint to survive the motion to dismiss, Plaintiff must allege a cognizable injury.  First, a plaintiff has standing to sue in federal court only if he suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003).  "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Baur*, 352 F.3d at 632 (citation marks omitted) (quoting *Lujan*, 504 U.S. at 560).  If a plaintiff does not plausibly allege that he suffered an injury, then he does not have standing, and the Court lacks jurisdiction over the claim.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

Second, several of Plaintiff's causes of action require an "injury."  For example, to prevail on a constructive fraud claim (Count II), a plaintiff must demonstrate an injury. *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 400 (S.D.N.Y. 2000) (noting that injury is an element of constructive fraud); *Prakashpalan v. Engstrom, Lipscomb and Lack*, 167 Cal. Rptr. 3d 832, 854 (Cal. Ct. App. 2014) (same).  Similarly, in order to demonstrate a breach of the covenant of good faith and fair dealing (Count VI), a plaintiff must show that the defendant's action "deprived the [ ] party of the benefit of its bargain." *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 180-81 (S.D.N.Y. 2007).

In conclusion, unless Plaintiff demonstrates he suffered an injury as a result of Defendants' alleged unlawful actions, the Court must dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

14

## 2.    Plaintiff Suffered No Injury by Virtue of the Assignments

The Court concludes that, in light of the Second Circuit Court of Appeals decision in

*Rajamin*, Plaintiff has failed to allege a cognizable injury.  757 F.3d 79.  In that case, the Second

Circuit held that a plaintiff generally does not suffer an injury by virtue of an assignment of his

mortgage, even if that assignment was invalid or unlawful.  *Id.* at 85-87.  The Court reasoned

that, regardless of whether a mortgage was validly assigned, the mortgagor is still obligated to

repay *someone*, whether it be the original lender or the entity to which the mortgage was

assigned.  *Id.* at 85-86.    Accordingly, the Second Circuit held that the assignment of a mortgage

generally causes no injury to the mortgagor, and therefore that such a person does not have

standing to challenge an assignment of his mortgage loan in federal court.  *Id*; *see also Tran v.*

*Bank of N.Y.*, No. 13 Civ. 580 (RPP), 2014 WL 1225575, at *4 n.7 (S.D.N.Y Mar. 24, 2014)

("[M]any federal courts, including several federal appellate courts, have held that a plaintiff-

borrower lacks standing to bring any claim that is based upon . . . the assignment of the plaintiff's

mortgage loans." (collecting cases)).  Relying on the same rationale, the Second Circuit also held

that a mortgagor does not have standing to challenge alleged violations of the Pooling Service

Agreement ("PSA").  *Rajamin*, 757 F.3d at 87; *Tran*, 2014 WL 1225575, at *4 n.7.

This same principle applies to this case.    Plaintiff acknowledges that he took out the $2.7

million mortgage loan, that he could not afford the loan, and that he eventually defaulted.

Amended Compl. ¶ 7, 23; Def. Ex. F ¶ 23.  Furthermore, as detailed above, the California

Superior Court already upheld the validity of the mortgage and Plaintiff's contractual obligation

to repay it, and Plaintiff is precluded from relitigating this issue or claim.  Even if Plaintiff's

allegations — that the defendants invalidly assigned his mortgage loan and then concealed that

fact — are true, these allegations do not obviate Plaintiff's contractual obligation to repay his

mortgage.  As another district court has explained "the question of who owns plaintiff's Mortgage is irrelevant. . . . [T]he mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans." *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 116-17 (E.D.N.Y. 2015) (quoting *Pollak v. Bank of America*, No. 12 CV 7726 (VB), 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013)).  In short, Plaintiff suffered no injury because he was required to pay back his mortgage regardless of whether his loan was assigned.

Plaintiff recognizes *Rajamin*'s general rule that a mortgagor does not have standing to challenge the assignments of his mortgage or violations of the PSA, *see* Opp. ¶ 13, but raises two arguments as to why this general rule should not apply to this case.  The Court finds neither persuasive.

Plaintiff first contends he suffered an injury because Defendants' concealment of the assignments caused him to "sue the wrong party" in state court.  Opp. ¶ 24.  According to Plaintiff, he "intended to file the lawsuit against the owner and holder of the note and mortgage," so he should have sued US Bank.  Opp. ¶ 22.  Because he did not know about the assignments, Plaintiff sued only Wells Fargo and Cal-Western in state court.

This argument suffers from two deficiencies.  First, Plaintiff did not sue the wrong party. According to Plaintiff's allegations, US Bank owned his mortgage for only one day: Wells Fargo assigned the mortgage to US Bank on October 18, 2012, and US Bank substituted Cal-Western as trustee the very next day.  Amend. Compl. ¶ 8-9; Ex. A; Ex. B.  Plaintiff did sue Cal-Western (along with Wells Fargo) in the prior litigation, and therefore did sue the "real" owners of his note and deed of trust.  Def. Ex. F; Def. Ex. I.

Second, even if Plaintiff had actually sued the "wrong party" in state court, he suffered no injury. The California Superior Court rejected Plaintiff's claims on the ground that they had no merit, as his mortgage was valid and Plaintiff had failed to perform his contractual obligations. Def. Ex. at J; Def. Ex. K. The state court did not reject Plaintiff's claims because he failed to sue the actual owner of the loan. *See id.* This reasoning demonstrates that the state court would have demurred the complaint, even if Plaintiff had sued US Bank in addition to Wells Fargo and Cal-Western. Because the outcome would have been the same if Plaintiff had known about US Bank, the failure to disclose the assignment caused Plaintiff no harm.

Plaintiff's next argument as to why he suffered an injury by virtue of the assignments is similarly unavailing. As mentioned earlier, in *Rajamin* the Second Circuit held that a mortgagor generally lacks standing to challenge the assignment of his mortgage, reasoning that such an assignment usually does not cause an injury to the mortgagor. 757 F.3d at 85-86. The Second Circuit, however, suggested that there may be exceptions to this general rule. In concluding that the plaintiffs in that particular case lacked standing, the Court noted that "there is no allegation that plaintiffs have paid more than they owed or have been asked to do so." *Id.* at 85. Plaintiff latches on to this passage from *Rajamin*, contending that he has standing because he is "facing multiple entities claiming ownership of his note and deed of trust." Opp. ¶ 14.

There are two problems with this argument. First, Plaintiff's allegations regarding the "multiple claims" of ownership are too conclusory and hypothetical to sufficiently state a claim. *See Iqbal*, 556 U.S. at 681 (noting that "conclusory" allegations are "not entitled to be assumed true"). This is because Plaintiff does not allege that multiple entities have actually made a demand of him or that Plaintiff has actually paid more than what was owed. Rather, he only speculates that he might run into problems in the future because multiple entities could

theoretically claim ownership. *See* Amend. Compl. ¶ 20.  The Second Circuit has already held

that such conjecture is insufficient to state a plausible claim for relief.  *See Rajamin*, 757 F.3d

at 85-86.

Second, Plaintiff's argument appears to misunderstand the role of the various parties

involved in his deed of trust.  Under California law, multiple entities can foreclose on a property.

*Calvo v. HSBC Bank USA, N.A.*, 130 Cal. Rptr. 3d 815, 821 (Cal. Ct. App. 2011) (quoting Cal.

Civ. Code § 2924(a)(1)) ("[A] 'trustee, mortgagee, or beneficiary, or any of their authorized

agents,' may initiate the foreclosure process.").  Plaintiff's amended complaint demonstrates that

Wells Fargo is the lender (or the "beneficiary") and that US Bank and Cal-Western are

subsequent "trustees."  *See* Ex. A; Ex. B; Ex. F.  Consequently, Wells Fargo *and* US Bank *and*

Cal-Western could all lawfully foreclose on his property.  Plaintiff is not facing "multiple

claims" of ownership, but rather being validly foreclosed upon by multiple permissible entities.

In conclusion, the Second Circuit has held that a plaintiff generally does not have

standing to challenge the assignment of his mortgage loan because such an assignment does not

cause an injury. *Rajamin*, 757 F.3d at 85-87.  Although Plaintiff raises a number of arguments as

to why this general rule should not apply in his case, the Court finds none of the arguments

persuasive.  Because Plaintiff does not plausibly state that he suffered an injury by the fact of the

assignments, the counts premised on the allegedly unlawful assignments (Counts I, II, IV, and

VI) are dismissed on standing grounds and for failure to state a claim.

### C.    Defendants are Not "Debt Collectors" for Purposes of the FDCPA

Count V, a cause of action alleging "several violations of the Fair Debt Collection

Practice Act," is the only one of Plaintiff's claims not premised on the purportedly invalid

assignments of his mortgage loan. *See* Amend. Compl. ¶ 62. This count fails for an independent reason.

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in the collection of consumer debts. *Jacobson v. Healthcare Financial Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). In order to survive a motion to dismiss, Plaintiff must allege in his complaint that the defendants are "debt collectors" within the meaning of the FDCPA. *In re Residential Capital, LLC*, No. 12–12020 (MG), 2015 WL 4040506, at *15 (S.D.N.Y. June 30, 2015) ("To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt.'"); *Capogrosso v. Troyetsky*, No. 14–CV–00381 (KNF), 2015 WL 4393330, at *3 (S.D.N.Y. July 17, 2015) (same). Plaintiff makes no such allegation in the complaint itself. *See* Amend. Compl. ¶ 61-66. For this reason alone, the cause of action should be dismissed.

Plaintiff likely fails to make this allegation because it is clear that Defendants are not "debt collectors." The FDCPA defines "debt collector" as one who "collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Crucially, the Act does not apply to "creditors," i.e. those "seeking to collect on debts owed to themselves." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 439 (E.D.N.Y. 2013) (quoting *Muniz v. Bank of Am., N.A.*, 11 Civ. 8296(PAE), 2012 WL 2878120, at *3, (S.D.N.Y. July 13, 2012)); *see also* 15 U.S.C. § 1692a(6)(A).

Wells Fargo is not a "debt collector." Plaintiff originated his mortgage loan with Wells Fargo. Amend. Compl. ¶ 7. "[B]ecause [Wells Fargo] was the very party to whom the debt was due," Wells Fargo "was clearly not a debt collector under the FDCPA." *Muniz*, 2012 WL 2878120, at *3 (citation and quotation marks omitted).

The Court also concludes that US Bank is not a "debt collector." When the right to collect on a mortgage loan is transferred or assigned, the assignee is a "debt collector" within the meaning of the FDCPA only if the loan was in default at the time of the transfer. *Kapsis*, 923 F. Supp. 2d at 439; *see also Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, No. ELH–12–00752, 2015 WL 2455811, at *10 (D. Md. May 22, 2015) ("Generally speaking, entities servicing or collecting a debt they were assigned before default are considered 'creditors' under the Act."); *Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, No. No. 09–CV–10082 (ER), 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) (same). The "critical" question for purposes of this motion to dismiss, therefore, is whether the amended complaint's allegations establish that Plaintiff's mortgage loan was "in default" at the moment of the assignment, or whether it was "merely outstanding." *Kapsis*, 923 F.Supp.2d at 439; *see also Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003). Because Congress has failed to define the term "default" for purposes of the FDCPA, *see Alibrandi*, 333 F.3d at 86, this determination "is to be made by a court on a case-by-case basis," *Kapsis*, 923 F. Supp. 2d at 440.

Plaintiff's allegations and attached exhibits, which the Court may properly consider under *Chambers*, 282 F.3d at 152, establish that his debt was not in default at the time of the assignment. The assignment of Plaintiff's note and deed of trust from Wells Fargo to US Bank occurred on October 18, 2012. Ex. A. Plaintiff fell behind on his loan payments before this date, as he did not make his March 1, 2012 payment. Ex. C. However, the fact that Plaintiff failed to make his payment on March 1, 2012 does not mean he was in default. In *Alibrandi*, the Second Circuit Court of Appeals rejected the argument "that a debt goes into default immediately after it becomes due," 333 F.3d at 84, instead holding that "[d]efault does not occur until well after a debt becomes outstanding," *id.* at 87. Here, a "Notice of Default" was sent on

20

November 13, 2012. Ex. C.  Plaintiff has made no allegations suggesting that his debt went into

default before this date.  *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014)

(dismissing FDCPA claim on a motion to dismiss because "the amended complaint does not

allege that CitiMortgage acquired [plaintiff's] debt after it was in default and so fails to plausibly

allege that CitiMortgage qualifies as a debt collector under FDCPA").  For example, Plaintiff

does not point to any contractual or regulatory language suggesting an earlier default date, and

the Court has found no such language in the deed of trust. *See* Def. Ex. A; *cf. Kapsis*, 923 F.

Supp. 2d at 442 (finding that plaintiff had plausibly alleged that his debt went into default

immediately, but only because the note had language suggesting that default was immediate).

Because Plaintiff's allegations establish that his debt went into default on the date of the "Notice

of Default" (November 13, 2012), Plaintiff's mortgage was not in default at the time of the

assignment (October 18, 2012), and therefore US Bank is not a "debt collector" subject to the

FDCPA.

   Plaintiff's only argument in response to this conclusion is to urge the Court to adopt the

reasoning of *Lohse v. Nationstar Mortg.*, No. 14–cv–00514–JCS, 2014 WL 5358966 (N.D. Cal.

2014).  Opp. ¶¶ 39-42.  The Court, however, fails to see how *Lohse* is relevant to this case.  The

question in this case is whether Defendants are "creditors" not subject to the FDCPA, a question

that turns on whether Plaintiff's mortgage was in default at the time of the assignment.  In *Lohse*,

however, it was apparently uncontested that the plaintiffs' mortgages were in default. *See* 2014

WL 5358966, at *1.  Furthermore, *Lohse* dealt with an entirely different legal question,

specifically, whether a defendant who initiated foreclosure proceedings could be a "debt

collector" for purposes of the FDCPA.  In *Lohse*, the district court answered that question in the

negative, holding that a defendant constitutes a debt collector subject to the FDCPA only if the

defendant engaged in "an[ ] action beyond statutorily mandated actions for non-judicial foreclosure." *Id.* at *8 (quoting *Reyes–Aguilar v. Bank of America*, 2014 WL 2153792, *14 (N.D. Cal. March 20, 2014)). *Lohse* has no bearing on this case.

## V.   CONCLUSION

The Court grants Defendants' unopposed request for judicial notice with respect to Exhibits F through L, and it denies the request as to the other exhibits as moot.

Defendants' motion to dismiss is granted because (1) Plaintiff's challenges to the validity of his mortgage are barred by res judicata, (2) Plaintiff suffered no injury by virtue of the assignments of his mortgage, and (3) Plaintiff does not, and cannot, allege that Defendants' are "debt collectors" subject to the FDCPA.  Plaintiff's request for leave to amend is denied, *see* Opp. ¶ 49, because amendment would be futile and would cause unnecessary delay. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); Dkt No. 21 (order from this Court stating that failure to cure the defects in a complaint in response to the motion to dismiss "may well constitute a waiver of Plaintiff's right" to file another complaint).

In light of the Court's resolution of the motion to dismiss, Defendants' motions to transfer and strike are denied as moot.[7]

This resolves Docket Numbers 9, 11, 13, 17, 26, 39, and 43.

The Clerk of the Court is directed to close the case.

---

[7] In their motion to dismiss, Defendants concede that if the Court "dismiss[es] the action on the merits," it would "alleviat[e] the need to transfer." Mot. at 1 n.1.

SO ORDERED.

Dated: September 30, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge